In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 07-1655

BELINDA DUPUY, et al.,

*Plaintiffs-Appellants*,

*v.*

ERWIN MCEWEN, Acting Director,
    Illinois Department of Children
    and Family Services,

*Defendant-Appellee*.

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 97 C 4199—**Rebecca R. Pallmeyer**, *Judge*.

———————

SUBMITTED APRIL 25, 2007—DECIDED JULY 31, 2007

———————

Before EASTERBROOK, *Chief Judge*, and POSNER and EVANS,
*Circuit Judges*.

POSNER, *Circuit Judge*. This class action suit by parents,
now in its eleventh year, challenges a range of practices by
the child-welfare agency of the State of Illinois that are
claimed to infringe parental rights protected by the due
process clause of the Fourteenth Amendment. The case
has twice been before us. *Dupuy v. Samuels*, 397 F.3d 493
(7th Cir. 2005), 465 F.3d 757 (7th Cir. 2006). In the second
case, while affirming a preliminary injunction because the

defendant had not appealed from its entry (instead the plaintiffs had appealed, contending the injunction didn't go far enough—we rejected the contention), we expressed, by way of guidance for the trial on the merits (only a *preliminary* injunction had been granted), our doubt about its soundness. The preliminary injunction required administrative review before the child-welfare agency could offer parents a "safety plan" in lieu of removing a child that it suspected of being neglected or abused from its parent's custody. (The safety plan might, for example, require that one of the parents move out of the home until the question of abuse or neglect was resolved.) We pointed out that as long as the parents weren't coerced to accept a safety plan by being given false information about the consequences of refusing, there was no reason to require administrative or judicial review of the offer—it was just an offer, which the parents would not accept unless they thought it would make them better off to do so.

When the case resumed in the district court, the agency moved for summary judgment on the ground that there was no evidence of misrepresentation. The plaintiffs agreed, so the district judge entered summary judgment, but they appealed anyway and now oppose the defendant's motion for summary affirmance on the ground that the motion is not within any of the categories that *United States v. Fortner*, 455 F.3d 752, 754 (7th Cir. 2006), deems appropriate for summary affirmance. They misread *Fortner*. The concern in that case was with an appellee's filing a motion for summary affirmance at the last minute, that is, right before the briefs on the merits were due to be filed. That made needless additional work for the appellant and for the court. There are situations (*Fortner* gives three examples) in which the last-minute filing is

proper—suppose a case had just been decided by the Supreme Court that made affirmance a slam dunk. There would be no purpose in requiring full briefing.

The motion in this case was filed well before the appellant's brief was due, and the plaintiffs have had and taken an opportunity to respond. Remember that they conceded in the district court that they had no evidence that would satisfy the standard we set forth in our previous opinion. They do not retract that concession in their opposition to the motion but (besides expressing disagreement with our opinion without presenting any new argument) contend merely that some of the class members "lack education" or have "low intelligence." The class, however, is not limited to the uneducated or the unintelligent, and a plaintiff obviously cannot obtain class-wide relief for harms suffered by only some of its members. *General Telephone Co. v. Falcon*, 457 U.S. 147 (1982); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513-14 (7th Cir. 2006).

The district judge's order that this appeal unavailingly challenges was one of several orders that she issued in an attempt to resolve three separate sets of claims pressed in this litigation; and it may provide helpful guidance to the district court to note our concern with the third order, which purports to retain jurisdiction of a terminated case. The three sets of claims are as follows: "Dupuy I" as we'll call it sought special procedures for child-care workers accused of abuse or neglect. Dupuy II complained that the safety plans had been coerced, and it is that set of claims that was before us in the prior appeal and is before us in this appeal. Dupuy III sought additional procedures for accused child-care workers.

The district judge first entered an order which stated that the Dupuy I and III claims were dismissed without

prejudice, but in the next paragraph she stated that they "shall be dismissed with prejudice in accordance with the terms of the stipulation," that is, a settlement of those claims. It is apparent that she intended to dismiss with prejudice only the claims of the named plaintiffs, because they were the only parties to the settlement. Three days later, however, having meanwhile granted summary judgment on the Dupuy II claims, she entered a "termination order" stating that the entire case was "dismissed with prejudice." That order wiped out the claims of the unnamed class members, apparently inadvertently, since they had not been parties to the settlement. The plaintiffs moved the judge to vacate the order, and she did, thus restoring the order that had dismissed the unnamed class members' Dupuy I and III claims without prejudice. She added that with respect to the named class members' Dupuy I and III claims she was "retain[ing] jurisdiction as provided in the Parties' stipulation." In the stipulation, the plaintiffs had expressly released the defendant from all claims "which arose or could have been raised" in the suit; that was a general release. *Fair v. International Flavors & Fragrances, Inc.*, 905 F.2d 1114, 1116 (7th Cir. 1990).

The district judge's attempted retention of jurisdiction to enforce the stipulation is the troublesome part of the last order. In *Lynch v. Samatamason, Inc.*, 279 F.3d 487, 489-90 (7th Cir. 2002), and *Shapo v. Engle*, 463 F.3d 641, 643 (7th Cir. 2006), we ruled, in reliance on *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375 (1994), that when a suit is dismissed with prejudice, it is gone, and the district court cannot adjudicate disputes arising out of the settlement that led to the dismissal merely by stating that it is retaining jurisdiction. See also *Blue Cross & Blue Shield Ass'n v. American Express Co.*, 467 F.3d 634, 636 (7th Cir. 2006).

Other cases, discussed in Morton Denlow, "Federal Jurisdiction in the Enforcement of Settlement Agreements: *Kokkonen* Revisited," 2003 *Fed. Cts. L. Rev.* 2 (2003); Denlow, "What Is an Attorney to Do? Ensuring Federal Jurisdiction Over Settlement Agreements in Light of Recent Seventh Circuit Cases," *The Circuit Rider: The Journal of the Seventh Circuit Bar Association*, May 2007, p. 24, assume that combining dismissal with prejudice with retention of jurisdiction to enforce the settlement is a permissible method of retaining authority to decide disputes arising from the settlement. The principal argument that Magistrate Judge Denlow makes for that procedure is that a defendant is unlikely to settle a case unless the case is dismissed with prejudice, as otherwise the defendant would be exposed to a repeat suit by the plaintiff, and therefore settlements that the district court is empowered to enforce will be discouraged. The obvious alternative, however, as suggested in *Shapo v. Engle*, *supra*, 463 F.3d at 646, is for the court to dismiss without prejudice but the parties to include in the settlement a release of the defendant (as was done here, making dismissal with prejudice redundant). That has the same effect as enabling a dismissal to be pleaded in a subsequent suit as res judicata, but avoids the paradox of dismissing a case with finality yet at the same time retaining it.

Magistrate Judge Denlow expresses concern that a release does not give a defendant as much security against further suit as a dismissal with prejudice, which allows the dismissal to be pleaded as res judicata. But both accord and satisfaction (the formal legal name of a release) and res judicata are affirmative defenses to a subsequent suit, and if the district court, by having dismissed without prejudice, retains the power to enforce the settle-

ment, it can enforce the release (a term of the settlement) directly, without putting the defendant to the trouble of having to plead release as a defense in a renewed suit. It is true that dismissal without prejudice, because it merely allows the suit to be refiled, will allow adjudication of issues relating to the settlement only if the refiled suit is timely; and when a suit is dismissed without prejudice, the statute of limitations continues to run from the date (normally the date of the injury) on which the claim accrued. E.g., *Coleman v. Milwaukee Board of School Directors*, 290 F.3d 932, 934 (7th Cir. 2002); *United States v. Carlone*, 666 F.2d 1112, 1113-14 (7th Cir. 1981). But the statute of limitations is just another affirmative defense, which the parties can waive in the settlement if they want the district court to be able to adjudicate disputes after the limitations period has run. Alternatively, they can elide any issue of untimeliness by embodying the settlement in a consent decree.

AFFIRMED.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*