UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 31, 2006[*]
Decided June 8, 2006

**Before**

Hon. TERENCE T. EVANS, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 05-3094

| | |
|---|---|
| JOSEPH J. MURRAY, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division |
| *v.* | No. 02 C 8407 |
| DANIEL ARTL, et al., *Defendants-Appellees.* | Matthew F. Kennelly, *Judge.* |

**O R D E R**

Joseph Murray, a prisoner of the Illinois Department of Corrections ("IDOC"), filed a civil rights action under 42 U.S.C. § 1983 alleging that prison guards used excessive force against him and that prison medical personnel were deliberately indifferent to the resulting injuries. After the district court dismissed Murray's claim against the prison medical personnel, he agreed to settle his suit against the prison guards. When Murray later asserted that he never agreed to settle his suit, the prison guards moved to enforce the settlement. The district court

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. *See* Fed. R. App. P. 34(a)(2).

granted the motion and also denied Murray's requests for appointed counsel. Murray now appeals and we affirm.

Murray alleged in his complaint that on January 27, 2002, prison guards broke his hand because he requested a different meal for dinner than what was served to him. He further alleged that IDOC medical personnel then failed to care for his broken hand adequately, and that the deficient care caused his hand to heal improperly. The district court granted summary judgment for the medical professionals based on Murray's failure to exhaust administrative remedies, but denied the prison guards' motion for summary judgment. Shortly thereafter Murray moved the district court to appoint counsel, stating only that he "had help with his lawsuit until his recent transfer"; the court later denied Murray's motion.

Faced with trial, the remaining parties entered into settlement negotiations, and on April 5, 2005, defense counsel offered Murray $7,000 to settle the case. According to defense counsel, Murray accepted the settlement orally. He declined, however, to sign a written agreement, explaining that "I am a man of my word." When defense counsel spoke with Murray two days later, Murray stated that he was only "thinking about the settlement."

The prison guards moved for enforcement of the settlement agreement. The district court ordered Murray to respond to the motion, but he did not do so. After considering the motion and the absence of any opposition, the district court granted the prison guards' motion and then dismissed the case with prejudice. A few days later, Murray filed a notice of appeal that was accompanied by a second motion for the appointment of counsel, which the district court subsequently denied.

On appeal Murray forwards three arguments. First, he argues that the district court erred by entering summary judgment on his deliberate indifference claim against the IDOC medical personnel, claiming that he did, in fact, exhaust his administrative remedies. Murray next argues that the district court erred by enforcing the settlement agreement because, he asserts, he never entered into any agreement. Finally, he argues that the district court erred by denying his requests for appointed counsel. We review de novo the district court's summary judgment ruling that Murray failed to exhaust his administrative remedies, *Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005), and look to see whether the district court abused its discretion when it enforced the settlement agreement and denied Murray's requests for appointed counsel, *Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006) (stating that denial of request for appointed counsel is reviewed for abuse of discretion); *Hakim v. Payco-General Am. Credits*, 272 F.3d 932, 935 (7th Cir. 2001) (stating that enforcement of settlement agreement is reviewed for abuse of discretion).

But before we reach the merits of these arguments we must first address a jurisdictional issue. Notices of appeal are normally due to the district court within 30 days of entry of judgment. *See* Fed. R. App. P. 4(a)(1). The district court in Murray's case entered judgment on June 14, 2005, and received his notice of appeal on July 18, 2005—four days late. *See id.* Murray explains in an affidavit that his notice was timely under the "prisoner mailbox rule." That rule provides that a notice of appeal filed by an inmate is deemed filed on the date on which the inmate deposits the notice in the prison's mail system if in an affidavit he: (1) provides the date on which the notice of appeal was deposited in the mail; and (2) states "that first-class postage has been prepaid." Fed. R. App. P. 4(c)(1). Murray further attests that he deposited his notice of appeal in mail on July 14, 2005—exactly 30 days after the district court's entry of judgment, and thus timely. *See* Fed. R. App. P. 4(a)(1), 4(c)(1). He did not, however, specifically attest that he prepaid first-class postage; instead, he stated that he paid "$2.41 to send the notice of appeal" and attached an "Inmate Transaction Statement" showing that on July 14 an invoice for "Legal Postage" in the amount of $2.41 was posted on his prison trust fund.

The government argues that this information is insufficient to satisfy the requirements of the prisoner mailbox rule. Relying on *United States v. Craig*, the government asserts that Murray's failure to specifically mention that he sent his notice of appeal by "first-class, pre-paid mail" deprives him of the rule because he did not provide the information "in the way that the rule specifies." *See* 368 F.3d 738, 740-41 (7th Cir. 2004). But the detailed information that he did provide, coupled with the fact that we received Murray's notice shortly after he claims to have deposited it in the mail, allows us to conclude that Murray sent his notice of appeal via "first-class, pre-paid mail," and thus abided by the rule.

Seeing that we have jurisdiction to address Murray's appeal, we can quickly dispose of his argument that he exhausted his administrative remedies for his deliberate indifference claim. The two filings that Murray asserts are his initial administrative grievances mention nothing about the treatment that he received for his broken hand. The "emergency grievance" that does address his medical treatment was not filed until August 30, 2002, more than seven months after the incident. IDOC regulations state that all administrative grievances must be filed within 60 days of the discovery of the incident giving rise to the grievance. 20 Ill. Admin. Code § 504.810(a) (1996); *Cannon v. Washington*, 418 F.3d 714, 717 (7th Cir. 2005). Murray claims that he did not know that his treatment was deficient until he received his prison medical records on April 30, 2002. Even if true, his "emergency grievance" was filed over four months later and thus was untimely. *See* 20 Ill. Admin. Code § 504.810(a). A prisoner must take "all steps prescribed by the prison's grievance system to exhaust remedies," *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004), and the failure to file a timely grievance constitutes a failure to exhaust, *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

Murray next argues that the district court improperly enforced the settlement agreement because the prison guards' attorney "misled" and "deceived" the court into believing that Murray accepted the settlement offer, which Murray now asserts he did not do. Under Illinois law, oral settlement agreements are valid. *Blutcher v. EHS Trinity Hosp.*, 746 N.E.2d 863, 870 (Ill. App. Ct. 2001); *see also Lynch, Inc. v. SamataMason Inc.*, 279 F.3d 487, 490 (7th Cir. 2002). In their motion to the district court, the prison guards described the terms of the oral agreement that the parties had reached, and that this agreement was confirmed when Murray told defense counsel, "I am a man of my word." Murray did not rebut this motion in the district court, deny its accuracy, or claim that he needed additional time to do so. Since Murray provided the district court with no reason to believe an oral settlement had not occurred, the district court was within its discretion in enforcing the settlement. *See Lynch*, 279 F.3d at 492.

Finally, civil litigants do not have a right to counsel, and before requesting the appointment of counsel a litigant must make reasonable attempts in securing counsel by himself. *See Zarnes v. Rhodes*, 64 F.3d 285, 288 (7th Cir. 1995) (citing *Jackson v. County of McLean*, 953 F.2d 1070, 1072-73 (7th Cir. 1992)). In his initial request for counsel, Murray did not show—or even claim—that he took reasonable steps to secure counsel on his own after his transfer; thus the district court did not abuse its discretion in denying his request. *See Zarnes*, 64 F.3d at 288 (stating that litigant's efforts in retaining counsel were sufficient when she contacted "several attorneys," all of whom declined to represent her). And although Murray claimed (without elaboration) in his second request for appointed counsel that he attempted to retain an attorney, this request was made after he filed his notice of appeal; the district court therefore lacked jurisdiction to address it. *See Wis. Mut. Ins. Co. v. United States*, 441 F.3d 502, 504 (7th Cir. 2006) (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)).

AFFIRMED.